IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

REBECCA L. HADLEY                                                                                         PLAINTIFF

vs.                                         Civil No. 1:08-cv-01020

MICHAEL J. ASTRUE                                                                                       DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Rebecca L. Hadley ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff filed her applications for SSI and DIB on March 30, 2005.  (Tr. 14, 49-51, 298-300). Plaintiff alleged she was disabled due to a "bad back." (Tr. 80, 335, 339).  Plaintiff alleged an onset

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

date of March 24, 2005.[2] (Tr. 15, 298). These applications were initially denied on June 29, 2005 and were denied again on reconsideration on September 19, 2005. (Tr. 31-33). On October 4, 2005, Plaintiff requested an administrative hearing on her applications. (Tr. 27). This hearing was held on November 8, 2006 in El Dorado, Arkansas. (Tr. 328-357). Plaintiff was present and was represented by counsel, Denver Thornton, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Daniel Lustig testified at this hearing. *See id.* On the date of this hearing, Plaintiff was forty-five (45) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2009), and had received her G.E.D. *See id.*

On May 11, 2007, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 14-19). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act on her alleged onset date and continued to meet those requirements through at least September 30, 2008. (Tr. 18, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since her alleged onset date. (Tr. 18, Finding 2). The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease status-post fusion surgery. (Tr. 18, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 18, Finding 4).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined her

---

[2] In her SSI and DIB applications, Plaintiff alleged two separate onset dates. (Tr. 49, 298). In her DIB application, Plaintiff alleged her onset date was May 29, 2004, and in her SSI application, Plaintiff alleged her onset date was March 24, 2005. *See id.* Plaintiff has not explained why she alleged two separate onset dates. (Doc. No. 6, Page 3). However, the ALJ found Plaintiff's alleged onset date was March 24, 2005. (Tr. 15). Therefore, this Court will also adopt this onset date.

RFC. (Tr. 18, Findings 5-6). First, the ALJ evaluated Plaintiff's subjective complaints pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and found her claimed limitations were not totally credible. (Tr. 18, Finding 5). Second, the ALJ determined that, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, Plaintiff retained the following RFC:

> The claimant has a residual functional capacity for a wide range of light exertional activity in which she lifts up to twenty pounds occasionally and ten pounds frequently, while sitting or standing/walking up to six hours per day each, with only occasional stooping or crouching.

(Tr. 18, Finding 6).

Based upon this assessment of Plaintiff's RFC, the ALJ then determined Plaintiff would be able to perform her Past Relevant Work ("PRW"). (Tr. 19, Finding 7). Plaintiff and the VE testified at the administrative hearing regarding this issue. (Tr. 328-357). Based upon this testimony, the ALJ determined Plaintiff's PRW included work as a hand packager (medium, unskilled) and wood products assembler (light, unskilled). (Tr. 18). The ALJ determined, considering her RFC, that Plaintiff would be able to perform her PRW as a wood product assembler as that job is performed in the national economy. (Tr. 19, Finding 7). Thereafter, the ALJ determined Plaintiff had not been under a disability as defined by the Act from March 24, 2005 through the date of the ALJ's decision or through May 11, 2007. (Tr. 19, Finding 8).

On May 16, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 9-10). *See* 20 C.F.R. § 404.968. On February 8, 2008, the Appeals Council declined to review the ALJ's unfavorable decision. (Tr. 4-8). On March 31, 2008, Plaintiff filed the present appeal. (Doc. No. 1). The parties consented to the jurisdiction of this Court on April 3, 2008. (Doc. No. 4). Both parties have filed appeal briefs. (Doc. Nos. 6-7). This case is now ready for decision.

**2. <u>Applicable Law</u>:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (A) the ALJ presented an improper hypothetical to the VE; (B) the ALJ erred by finding Plaintiff had the RFC to perform her PRW as a wood product assembler; (C) the ALJ improperly discredited the opinion of her treating physician, Dr. Lee Buono, M.D.; and (D) the ALJ conducted an improper *Polaski* evaluation. (Doc. No. 6, Pages 3-19). In response, Defendant argues that substantial evidence supports the ALJ's RFC determination, and the ALJ properly gave Dr. Buono's opinion limited weight. (Doc. No. 7, Pages 4-12). Defendant also argues that the ALJ properly assessed Plaintiff's credibility and discounted Plaintiff's subjective complaints for legally-sufficient reasons. *See id.* at 12-16. Finally, Defendant argues that Plaintiff failed to satisfy her Step Four burden of establishing that her impairment

prevents her from performing her PRW as a wood product assembler. *See id.* at 16-17.

### A.    Improper Hypothetical to the VE

Plaintiff claims the ALJ erred by failing to present any hypothetical questions to the VE. (Doc. No. 6, Page 5). However, as noted above, this disability determination was made at Step Four of the sequential evaluation process. At Step Four, the claimant has the burden of demonstrating that he or she is unable to perform his or her PRW. *See Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir. 2004). Accordingly, because the *claimant* has the burden of establishing his or her disability, no testimony from a VE is required. *See Banks v. Massanari,* 258 F.3d 820, 827 (8th Cir. 2001) (holding that vocational expert testimony is not required at Step Four where the claimant retains the burden of proving that he or she cannot perform his or her PRW). Therefore, this Court finds the ALJ was not required to present any hypothetical questions to the VE, and Plaintiff's first claim is without merit.[3]

### B.    Plaintiff's RFC to Perform Her PRW

Plaintiff claims the ALJ erred in finding she retained the RFC for light work. (Doc. No. 6, Pages 5-13). Specifically, Plaintiff claims that her medical records from 2003 until 2007 reflect that she suffers from severe, disabling back pain that prevents her from even doing light work. *See id.* Plaintiff provides a very thorough summary of those medical records in her briefing. *See id.* However, since Plaintiff's alleged onset date was March 24, 2005, this Court will only consider medical records dated beginning and dated after that time period. These medical records during the

---

[3] In his opinion, the ALJ found Plaintiff retained the RFC to perform her PRW and that the "testimony of the vocational expert was a key factor in making this finding." (Tr. 19, Finding 7). However, it was within the ALJ's discretion to utilize the testimony of the VE in order to determine whether Plaintiff retained the RFC to perform her PRW, and such testimony was not *required.* Accordingly, this Court will not reverse for the ALJ's failure to present hypothetical questions to the VE when such hypothetical questions are not required. Furthermore, the ALJ did question the VE regarding Plaintiff's PRW, and as such, fairly found that this testimony "was a key factor in making this finding." (Tr. 352-355).

relevant time period date from April 11, 2005 until January 25, 2007.  (Tr. 99-101, 114-118, 165-171, 199-231, 233-268, 289-296, 306-327).  During this time period, Plaintiff sought treatment from Dr. Rodney L. Griffin, M.D. (Tr. 114-118, 243-255, 259-262, 289-292, 313-321), Magnolia Hospital (Tr. 99-101, 233-241, 256-258, 264-268), Dr. Lee Buono, M.D. (Tr. 165-170, 204-231, 242-), Dr. David H. Bauer, M.D. (Tr. 171), Medical Center of South Arkansas (Tr. 199-201), Dr. Douglas Edmondson, M.D. (Tr. 202-203), Dr. Khalid Malik (Tr. 293-296), and Dr. Kenneth Gati, M.D. (Tr. 306-312).  Furthermore, Plaintiff is only alleging a disability due to her back pain.  (Tr. 80, 335, 339).  Therefore, this Court will only address the medical records related to Plaintiff's back problems.[4]

As an initial matter, Plaintiff's medical records indicate that she has a history of degenerative disc disease in her back that dates back to a time prior to her alleged onset date.  (*e.g.,* Tr. 124).  Her medical records during the relevant time period also indicate that she suffers from this impairment.  Specifically, on April 11, 2005, during the relevant time period, Plaintiff reported suffering from "a lot of pain in her lower back," was diagnosed with lumbar disc disease, and was prescribed Tylenol No. 3 once every four hours as needed for her pain.  (Tr. 118).  On April 18, 2005, Dr. Buono of the Neurosurgical Associates of Texarkana evaluated Plaintiff's back pain and suggested that "due to her age, we are headed for a possible fusion surgery some time in her life, if not in the very near future."  (Tr. 229, 231).  On April 21, 2005, Plaintiff underwent a whole body bone scan, which was negative.  (Tr. 117, 230).  On May 9, 2005, Plaintiff was examined by Dr. Matthew E. Barnett, M.D.

---

[4] For example, many of Plaintiff's medical records relate to Plaintiff's other impairments, such as abdominal pain (*e.g.,* Tr. 264-265) and Plaintiff's elevated temperature and headache.  (*e.g.,* Tr. 266-267).  Because Plaintiff has not alleged these are disabling impairments, this Court will not examine the medical records related to these medical problems.  Of course, Plaintiff's other medical records *related* to her back pain (such as the medical records involving the pain that radiates down from her back to her legs) will be addressed.  (*e.g.,* Tr. 208, 337).

in the emergency room at Magnolia Hospital. (Tr. 99-101, 268). Plaintiff reported suffering from lower back pain and was diagnosed with degenerative disc disease. *See id.* She was treated, released, and directed to follow-up with her treating physician. *See id.* On May 10, 2005, Plaintiff again complained of severe lower back pain and claimed that "[e]ven riding in the wheelchair makes her have severe pain." (Tr. 115). Plaintiff was diagnosed with lumbar disc disease and spinal stenosis, and she was prescribed one Tylenol 3 every four hours as needed for pain. *See id.*

On May 4th, 16th, and 23rd of 2005, Plaintiff underwent a series of three steroid injections for lower back and right leg radicular pain. (Tr. 165-170). Plaintiff reported that those steroid injections were not beneficial. *See id.* On June 6, 2005, Plaintiff returned for a follow-up appointment for her back pain, and Dr. Buono recommended that she undergo a posterior lumbar interbody fusion. (Tr. 228). On June 14, 2005, Plaintiff underwent this procedure. (Tr. 222-225). On June 22, 2005, Plaintiff reported to Dr. Buono that the surgery went "quite well." (Tr. 218). During this appointment, Plaintiff denied suffering from any significant back or leg pain. *See id.* Dr. Buono recommended that she come back in the office in one month with some AP and lateral x-rays of her lumbar spine. *See id.* On July 11, 2005, Plaintiff reported that she had experienced a "little pop in her back when she was getting out of the bathtub." (Tr. 217). Dr. Buono reported that he believed Plaintiff "just moved a little too much in the bathtub and strained her back." *See id.*

On July 25, 2005, Plaintiff was examined by Dr. Buono during a follow-up appointment after her back surgery. (Tr. 215-216). Dr. Buono noted that Plaintiff had brought "some x-rays of her lumbar spine" with her. *See id.* Dr. Buono evaluated those x-rays and found that the "fusion mass looks excellent, as well as the position of the screws and grafts." (Tr. 215). However, despite this assessment of Plaintiff's post-surgical back condition, Dr. Buono still found Plaintiff was

"permanently disabled" due to her "significant back disease." *See id.* Dr. Buono also found that "[w]ithout question, she [Plaintiff] will not be able to hold any physical-labor job due to her lumbar disease." *See id.*

Notably, from the date of that appointment, July 25, 2005, until the date of her last appointment with Dr. Buono on July 19, 2006, Plaintiff's medical records indicate that her back and leg pain had markedly improved. Specifically, on August 29, 2005, Dr. Buono reported that Plaintiff was "doing quite well," had only a "little bit of pain in her back," and was overall "very happy with the results of the surgery." (Tr. 214). However, despite this positive prognosis, Dr. Buono still found that from "this point on she will be permanently disabled." *See id.* On October 5, 2005, Dr. Buono reported Plaintiff had been doing "quite well since the surgery" but had started to experience pain in her left buttock and going to the back of her leg on the left side. (Tr. 212). Dr. Buono ordered additional imaging studies to determine whether this pain could be associated with Plaintiff's surgery. *See id.*

On October 12, 2005, at Dr. Buono's direction, Plaintiff had a CT of her lumbar spine and an MRI of her lumbar spine. (Tr. 209-211). On October 19, 2005, Dr. Buono examined these images and found that they "look great." (Tr. 213). He found that "[t]here is absolutely perfect position of the screws and excellent decompression, without evidence of nerve compression." *See id.* During this appointment, Dr. Buono also noted that Plaintiff had "a little bit of burning pain down her left leg" and only recommended that she return in two months for a follow-up appointment. *See id.*

However, once again, despite these positive test results and this positive prognosis, Dr. Buono still found Plaintiff was disabled. (Tr. 208). Specifically, in a letter to Plaintiff's attorney

9

dated November 7, 2005, Dr. Buono found the following:

> In my opinion, as far as her physical function is concerned, Ms. Hadley still has significant burning pain in her left leg, which is considered neuropathic pain. This may be a chronic syndrome, and as such would be worsened by physical activity. I would, therefore, restrict her from standing or walking or any physical activity for over an hour a day. She certainly cannot lift anything heavier than a knife, a fork, or a newspaper, and should avoid any bending, twisting, or prolonged standing, sitting, or physical labor.

(Tr. 208).

Thereafter, on December 12, 2005, Plaintiff was again examined by Dr. Buono during a follow-up appointment. (Tr. 207). During this appointment, Dr. Buono found that Plaintiff "only has some back pain when she is sitting or standing" and that apart from some pain in her SI joints, "she has done much better from the surgery, and she has no leg pain." *See id.* Dr. Buono recommended that Plaintiff have SI joint injections to treat this pain. *See id.* Plaintiff had these SI joint injections done. (Tr. 199-203). On March 15, 2006, Dr. Buono examined Plaintiff during a follow-up appointment. (Tr. 205). Dr. Buono noted that Plaintiff had the SI joint injections but also found that they had given her some pain in her leg. *See id.* Dr. Buono referred Plaintiff to Dr. Khalid Malik, M.D. for an EMG and nerve conduction study in order to evaluate the burning pain in Plaintiff's leg. *See id.* Dr. Malik conducted the EMG and nerve conduction studies. (Tr. 293-296).

On April 10, 2006, Dr. Griffin examined Plaintiff during a follow-up appointment for her cholesterol studies. (Tr. 252). During that appointment, Dr. Griffin reported that her back was "doing much better at present." *See id.* Dr. Griffin only prescribed Plaintiff Ibuprofen for her back pain. *See id.* On April 19, 2006, Plaintiff was examined by Dr. Buono as a part of a follow-up appointment. (Tr. 205). During that appointment, Dr. Buono reported that Plaintiff's back pain "is

10

still improved" but that she some episodes of falling as a result of trouble with her right leg. *See id.* Dr. Buono increased her does of Lyrica and directed Plaintiff to schedule a follow-up appointment in two months. *See id.* On July 19, 2006, Dr. Buono reported that Plaintiff was still taking Lyrica and noted that "[a]t this point in time, she has a non-surgical problem and will follow-up with me on a p.r.n. basis." (Tr. 242). There are no further records from Dr. Buono.

On October 23, 2006, Plaintiff reported suffering from lower back pain and stiffness. (Tr. 291). Dr. Griffin continued Plaintiff on her present pain medication and recommended she be reevaluated in one month. (Tr. 291). On November 7, 2006, on a "Nursing Note," Plaintiff again reported suffering from constant lower back pain that "radiates down [her] legs." (Tr. 292). On January 25, 2007, Plaintiff reported her back pain was "about the same." (Tr. 319). Dr. Griffin diagnosed her with lumbar disc disease and continued Plaintiff on her current pain treatment. *See id.*

Considering these medical records, this Court finds the ALJ did not err in evaluating Plaintiff's RFC. Undoubtedly, as reflected in these medical records, Plaintiff suffers from some level back pain. Prior to Plaintiff's back surgery in June of 2005, her back pain was severe. However, subsequent to that back surgery, Plaintiff's medical records indicate that she only suffered from mild to moderate back pain, and her records clearly indicate that her back and leg pain dramatically improved after her back surgery. For instance, on October 19, 2005, Dr. Buono examined the images of Plaintiff's back and found that they "look great" and found that "[t]here is absolutely perfect position of the screws and excellent decompression, without evidence of nerve compression." (Tr. 213). Furthermore, on April 10, 2006, Dr. Griffin examined Plaintiff during a follow-up appointment for her cholesterol studies. (Tr. 252). During that appointment, Dr. Griffin reported that her back was "doing much better at present." *See id.* Dr. Griffin only prescribed

Plaintiff Ibuprofen for her back pain. *See id.*

Additionally, it is significant to this Court that, while Plaintiff sought follow-up treatment in 2007 for a rotator cuff problem, a left ankle sprain, and other problems, her medical records indicate that she did not seek further treatment for her back pain throughout 2007. (*e.g.,* Tr. 315-319). Plaintiff's failure to seek continued follow-up treatment, coupled with her continued use of the pain medication prescribed to her for her back (Tr. 326-327), indicates that she is able to take pain medication to control her back pain and that her back pain is well-controlled with medication. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment that can be controlled by treatment or medication is not considered disabling) (internal citation omitted). It is also significant to this Court that while Plaintiff claims she is disabled and unable to perform light work, she is able to homeschool her child unassisted during the day. No credible evidence in the record indicates that Plaintiff does not retain the RFC for light work.[5] Accordingly, this Court finds the ALJ's RFC determination should be affirmed.

### C.  Plaintiff's Treating Physician

Plaintiff claims the ALJ should have adopted the opinion of her treating physician, Dr. Buono. (Doc. No. 6, Pages 13-15). As noted above, on August 29, 2005, Dr. Buono found Plaintiff was permanently disabled. (Tr. 214). Thereafter, on November 7, 2005, Dr. Buono found Plaintiff suffered from severe functional restrictions as a result of pain. (Tr. 208). However, instead of adopting the opinion of Dr. Buono, the ALJ rejected his opinion and found Plaintiff was not disabled. (Tr. 14-19). Plaintiff argues that the ALJ's rejection of Dr. Buono's opinion was reversible error. (Doc. No. 6, Pages 13-15).

---

[5] This Court will address Dr. Buono's opinion and Plaintiff's subjective complaints in the next sections of this opinion.

In response, Defendant argues that the ALJ properly gave Dr. Buono's opinion limited weight. (Doc. No. 7, Pages 9-12). Defendant argues that the ALJ properly evaluated the record as a whole and found Dr. Buono's opinion was inconsistent with his own records and with the evidence as a whole. *See id.* Furthermore, Defendant argues that the determination of whether a claimant is disabled or not is an issue reserved for the SSA, not for a claimant's physician. *See id.* Therefore, Dr. Buono's bare opinion that Plaintiff is disabled is not controlling. *See id.*

Under the Social Security Regulations ("Regulations"), the opinion or findings of a claimant's treating physician may be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (2006). The SSA will assign controlling weight to the opinion of a claimant's treating physician if the nature and severity of the claimant's impairment or impairments is well-supported by "medically acceptable clinical and laboratory diagnostic techniques" and the treating physician's opinion is not inconsistent with other substantial evidence in the record. *See id.*

When evaluating whether to give controlling weight to a treating physician's opinion, the SSA considers the following six factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the treating physician's opinion; (4) the consistency of the treating physician's opinion with the record as a whole; (5) the specialization of the treating physician; and (6) any other factors brought to the SSA's attention. *See id.* After properly considering these six factors, the SSA may or may not give controlling weight to the opinion of a claimant's treating physician. 20 C.F.R. § 404.1527(d)(2). Regardless of the SSA's determination, however, the SSA is required to give "good reasons" in its notice of determination or decision for the weight given to the claimant's treating physician's opinion. *See id.*

This Court finds that the ALJ's rejection of Dr. Buono's opinion is supported by substantial evidence. Specifically, in the record dated August 29, 2005, Dr. Buono found Plaintiff was permanently disabled. (Tr. 214). However, in the *very same medical record,* Dr. Buono found Plaintiff was "doing quite well," only had "a little bit of pain in her back," and was "very happy with the results of the surgery." *See id.* Such findings are entirely inconsistent with the determination that Plaintiff was permanently disabled. Furthermore, as noted by Defendant, the determination of whether a claimant is disabled is left to the discretion of the SSA, not to a claimant's physician. *See* 20 C.F.R. § 404.1527(e)(1) (stating that "[w]e [the SSA] are responsible for making the determination or decision about whether you meet the statutory definition of disability"). Dr. Buono gave no specific basis for his finding that Plaintiff was "permanently disabled," and as such, the SSA is not required to adopt that opinion.

Furthermore, Dr. Buono's findings on November 7, 2005 are not entitled to controlling weight. Specifically, Dr. Buono found Plaintiff had extreme restrictions on her physical activity due to her physical impairments:

> In my opinion, as far as her physical function is concerned, Ms. Hadley still has significant burning pain in her left leg, which is considered neuropathic pain. This may be a chronic syndrome, and as such would be worsened by physical activity. I would, therefore, restrict her from standing or walking or any physical activity for over an hour a day. ***She certainly cannot lift anything heavier than a knife, a fork, or a newspaper, and should avoid any bending, twisting, or prolonged standing, sitting, or physical labor.***

(Tr. 208) (emphasis added). First, this opinion is not credible because with these extreme limitations, Plaintiff could hardly function unassisted and would probably even be bedridden. Plaintiff does not claim that she suffers from such severe limitations. Second, this opinion is not credible because it is inconsistent with Dr. Buono's other findings. After Plaintiff's lumbar surgery

14

on June 14, 2005, Dr. Buono reported that Plaintiff's pain had significantly improved. On October 19, 2005, after her lumbar surgery, Dr. Buono reported that the images from Plaintiff's surgery "look[ed] great" and that there was "absolutely perfect position of the screws and excellent decompression without evidence of nerve compression." (Tr. 213). Apart from "a little bit of burning pain down her left leg," Plaintiff's back had well-healed, she was neurologically intact, and she should only return for a follow-up appointment in two months. *See id.* Furthermore, on March 15, 2006 and April 19, 2006, Plaintiff's back pain remained the same–was "still improved"–and she only reported having some leg pain. (Tr. 205). The ALJ properly determined these other findings did not support Dr. Buono's opinion that Plaintiff suffered from extreme physical limitations.

### D.     *Polaski* Analysis

Plaintiff also claims the ALJ erred in conducting his *Polaski* analysis. (Doc. No. 6, Pages 15-19). Plaintiff claims that, although the ALJ stated the *Polaski* factors, he did not fully evaluate those factors. *See id.* Plaintiff disputes most of the ALJ's findings in support of his credibility determination. *See id.* In response, Defendant argues that the ALJ's credibility determination is supported by substantial evidence and should be affirmed. (Doc. No. 7, Pages 12-16). Defendant argues that each one of the ALJ's findings regarding Plaintiff's credibility is accurate and is based upon the record. This Court will address the ALJ's findings regarding Plaintiff's credibility.

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[6] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are

---

[6] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny,

as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions.  *See Polaski,* 739 at 1322.  The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.*  The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.  *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).  As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference.  *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).  The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors.  *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998).  The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In this opinion, the ALJ analyzed several of the *Polaski* factors and based his credibility determination upon the following findings: (1) despite her current complaints of back pain,

---

the Eighth Circuit has not yet required the analysis of these additional factors.  *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007).  Thus, this Court will not require the analysis of these additional factors in this case.

Plaintiff's disc herniation had responded positively to surgery in 2005; (2) despite her reports of significant back improvement after her lumbar surgery, Plaintiff went to see her neurosurgeon the day after she requested a hearing on her disability claim and reported significant pain; (3) even when he found Plaintiff was "doing well," Plaintiff's neurosurgeon indicated he thought Plaintiff was permanently disabled; (4) even though he thought Plaintiff needed physical therapy, Plaintiff's neurosurgeon did not prescribe it because Plaintiff was in litigation; (5) despite her complaints of severe pain, Plaintiff reported to the emergency room doctor that she was not taking any pain medication; (6) despite her report that she was not taking any pain medication, Plaintiff had been prescribed acetaminophen and hydrocodone; (7) despite her complaints of back pain, Plaintiff was able to perform extensive daily activities, including homeschooling her child; and (8) Plaintiff's work history was erratic. (Tr. 16-17).

As noted above, Plaintiff disputes most of these findings. (Doc. No. 6, Pages 15-18). First, Plaintiff argues the ALJ improperly found she underwent back surgery *before* she filed her application for disability benefits. *See id.* Plaintiff is incorrect in this claim. The ALJ properly found Plaintiff filed a claim for disability benefits and then underwent back surgery "which responded positively to surgery." (Tr. 16). Second, Plaintiff argues the ALJ improperly found she requested a hearing the day before she went to see his doctor and reported significant pain. (Doc. No. 6, Page 17). Plaintiff is also incorrect in this claim. On October 4, 2005, Plaintiff requested a hearing by an ALJ. (Tr. 27). On October 5, 2005, Dr. Buono examined Plaintiff, and Plaintiff reported having severe leg pain. (Tr. 212). Accordingly, the ALJ properly found Plaintiff had requested a hearing the day before she went to see his doctor and reported significant leg pain.[7]

---

[7] Of course, the ALJ confuses the term "orthopedist" with "neurosurgeon" throughout his opinion. (Tr. 14-19). However, this is not harmful error.

17

Third, Plaintiff claims Dr. Buono did not prescribe physical therapy because she could not afford it, not because she was in litigation. (Doc. No. 6, Page 17). Plaintiff references a note by Dr. Buono reflecting that fact. *See id.* However, despite her claimed inability to pay for physical therapy, Plaintiff's failure to seek follow-up treatment is not excused due to her inability to pay for it. *See Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003) (holding that the failure to seek medical treatment is not excused unless the claimant attempts to obtain medical treatment but is denied that medical treatment because of insufficient funds or insurance). Therefore, the ALJ did not err in criticizing Plaintiff for failing to seek physical therapy, even if that therapy was not covered by Medicaid. Fourth, Plaintiff claims the ALJ improperly criticized her for reporting she was not taking any pain medication when she arrived at the emergency room on May 9, 2005. (Doc. No. 6, Pages 17-18). However, Plaintiff's medication list reflects that she had been prescribed pain medication during that time period. (Tr. 93-94). Accordingly, the ALJ was justified in criticizing Plaintiff for failing to report her prescription pain medication when she was admitted to the emergency room.[8]

Fifth and finally, Plaintiff argues she has very limited daily activities, and the ALJ improperly determined her daily activities were extensive. (Doc. No. 6, Page 16). It is undisputed that Plaintiff has the responsibility of caring for and homeschooling her son. (Tr. 336). Even if Plaintiff has the option of taking frequent breaks, such daily activities cannot be considered "very limited." Accordingly, pursuant to this evaluation of the ALJ's *Polaski* analysis, this Court finds that it is supported by substantial evidence and should be affirmed.

---

[8] Plaintiff's prescription for hydrocodone is particularly troubling because Plaintiff was reportedly allergic to hydrocodone. (Tr. 231, 326-327).

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 10th day of June, 2009.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE